**John Jekasai SANGO–DEMA, Petitioner,**

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 99–CV–11325–PBS.**

United States District Court, D. Massachusetts.

Nov. 20, 2000.

---

214

John J. Sango–Dema, Plymouth County Correctional Facility, Plymouth, for John Jekesai Sango–Dema, Plaintiffs.

Frank Crowley, Special Assistant U.S. Attorney, U.S. I.N.S., Boston, for Salem Superior Court, Immigration & Natura, Respondents.

## MEMORANDUM AND ORDER

SARIS, District Judge.

Petitioner John Jekesai Sango–Dema ("Sango–Dema"), who is an alien subject to deportation based on his prior criminal convictions, petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Respondent, District Director of the Immigration and Naturalization Service ("INS"), has moved for summary judgment against the Petitioner on both jurisdictional and substantive grounds. Sango–Dema has filed a cross-motion for summary judgment.

For the reasons stated below, the motion of the INS is **DENIED** and the petition of Sango–Dema is **ALLOWED** in part.

### BACKGROUND

The Petitioner Mr. Sango–Dema is a native and citizen of Zimbabwe who entered the United States as a visitor in December of 1991. On April 21, 1994, Sango–Dema pleaded guilty in Essex Superior Court in Salem, Massachusetts to counts of rape of a child under Mass. Gen. L. ch. 265, § 23 and indecent assault and battery on a person over fourteen years old under Mass. Gen. L. ch. 265, § 13H.[1] Sango–Dema was sentenced to two-and-a-half years incarceration for the rape of a child conviction; he received a three to five year suspended sentence and three years probation for the indecent assault conviction.[2]

---

1. Almost every party involved—including the Superior Court, the INS, the Immigration Judge, and the Board of Immigration Appeals—has mistakenly labeled the conviction for rape of a child as falling under Mass. L. ch. 265, § *13*. That statute, however, deals with the crime of manslaughter. Sango–Dema appears to be the only party to have caught this. It is evident that the proper statutory reference was Mass. Gen. L. ch. 265, § *23* and that the confusion resulted from a mere clerical error. *Cf. Maghsoudi v. I.N.S.*, 181 F.3d 8, 9 (1st Cir.1999) (taking heed of clerical error in designating statutory section and analyzing petitioner's claims under proper statute).

2. As a condition of probation, Sango–Dema was also required to stay away from the vic-

After serving his sentence, Sango–Dema was issued an administrative notice to appear on November 24, 1998 that charged him with removability under the Immigration and Nationality Act ("INA") for conviction of an aggravated felony. After a hearing, the Immigration Judge ("IJ") issued a decision on December 16, 1998 that Sango–Dema was removable as charged and ineligible for any relief from removal. Sango–Dema was ordered removable to Zimbabwe. The Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"), where his appeal was dismissed on August 26, 1999.

The Petitioner filed an action in this Court on June 17, 1999. That action, styled as a motion to vacate his state court conviction, was referred to the state court. Sango–Dema was also given leave to refile his action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, which he did on August 4, 1999.

After numerous delays (relating mostly to Sango–Dema's efforts to vacate his state court convictions), both parties have moved for summary judgment on Sango–Dema's petition.

## DISCUSSION

### A. Scope of Available District Court Review

In its earlier motion to dismiss, the INS argued that this Court lacks jurisdiction over Sango–Dema's petition for a writ of habeas corpus under 28 U.S.C. § 2241. It is therefore important at the outset to establish whether this Court has jurisdiction over this matter and to clarify the scope of review available.

■ Under the current immigration laws, direct review of decisions of the BIA in the federal courts is severely limited, especially where the BIA's removal ruling

is based on the alien's conviction for an aggravated felony. According to the new INA § 242, enacted as part of the permanent rules for the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (1996):

> Judicial review of all questions of law or fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

IIRIRA § 306(a); INA § 242(b)(9); 8 U.S.C. § 1252(b)(9). This "zipper clause" channels all review of removal proceedings through INA § 242, which provides for only limited review in the court of appeals. See IIRIRA § 306(a)(2); INA § 242(b). Review under § 242 is further qualified by § 242(a)(2)(C), which reads: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony] ...." IIRIRA § 306(a); INA § 242(a)(2)(C); 8 U.S.C. § 1252(a)(2)(C). Thus, under IIRIRA's permanent rules, direct review of a finding that an alien is removable because of a conviction for an aggravated felony is available only in the court of appeals and is strictly limited to determining jurisdictional facts.[3] See Sousa v. I.N.S., 226 F.3d 28, 31 (1st Cir.2000) (court's review is limited to determining whether petitioner is 1) an alien who is 2) removable for having committed an aggravated felony).

■ Notwithstanding these limitations, the First Circuit has held that the federal courts' traditional jurisdiction to entertain habeas corpus petitions under 28 U.S.C.

---

tim and receive sexual offender treatment and alcohol and drug treatment.

**3.** It is undisputed that the proceedings for the removal of Sango–Dema are governed by IIR-

IRA's permanent rules. See Prado v. Reno, 198 F.3d 286, 288 n. 2 (1st Cir.1999) (permanent rules of IIRIRA apply to proceedings commenced on or after April 1, 1997).

§ 2241 was not repealed by the sweeping provisions of IIRIRA § 306(a) for divesting federal court jurisdiction. *See Mahadeo v. Reno,* 226 F.3d 3, 8 (1st Cir.2000). *Accord St. Cyr v. I.N.S.,* 229 F.3d 406, 409 (2nd Cir.2000); *Liang v. I.N.S.,* 206 F.3d 308, 323 (3rd Cir.2000); *Flores–Miramontes v. I.N.S.,* 212 F.3d 1133, 1140 (9th Cir.2000). *But see Max–George v. Reno,* 205 F.3d 194, 199 (5th Cir.2000) (holding that IIRIRA § 306(a) eliminates § 2241 habeas jurisdiction for those cases that fall within its scope); *Richardson v. Reno,* 180 F.3d 1311, 1314–15 (11th Cir.1999) (same). Thus, under the First Circuit's holding in *Mahadeo,* this Court has jurisdiction over all Sango–Dema's claims falling legitimately within the scope of a habeas petition under § 2241. That is, this Court may entertain Sango–Dema's constitutional and statutory construction claims. *See Mahadeo,* 226 F.3d at 6 n. 6. To the extent, however, that Sango–Dema raises claims that are neither constitutional nor involve an interpretation of a federal statute, those claims must fail as beyond the scope of the petition.

**B. Summary Judgment Standard**

■ The claims in Sango–Dema's hand-drafted pro se habeas petition are poorly developed and often difficult to decipher. Where a petitioner proceeds pro se, a court should read his papers liberally and interpret them to raise the strongest arguments that they suggest. *See Strahan v. Coxe,* 127 F.3d 155, 158 n. 1 (1st Cir.1997). Hence, this court has taken pains to separate his potential claims and analyze them individually. Nonetheless, a petitioner's status as pro se does not permit a court to exempt him from the procedural requirements of summary judgment. *See F.D.I.C. v. Anchor Properties,* 13 F.3d 27, 31 (1st Cir.1994) ("We have consistently held that a litigant's pro se status does not absolve him from compliance with the Federal Rules of Civil Procedure.") (citations and quotations omitted).

A motion for summary judgment must be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on the motion the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995).

■ The standards are the same where, as here, both parties have moved for summary judgment. "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Serv., Inc.,* 761 F.Supp. 194, 197–98 (D.Mass.1991) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (2d ed.1983)).

**C. Collateral Attack on State Conviction**

First, Sango–Dema argues that he is not an "aggravated felon" removable under INA § 237(a)(2)(A)(iii). As a basis for this claim Sango–Dema asserts that his guilty plea in state court was invalid because he was not made aware of the immigration consequences of his conviction.

■ Under Massachusetts state law, the court must advise a criminal defendant that a guilty plea may have the consequence of deportation before such a plea can be accepted. *See* Mass. Gen. L. ch. 278, § 29D. Without such a notice, the court must vacate the plea. *Id.* If no transcript exists to confirm that the proper notice was given, the plea must also be vacated. *Id.*

Upon Sango–Dema's first filing with this court, I directed his motion to vacate his

conviction to the proper state court. That motion was reviewed by the Hon. Elizabeth B. Donovan of the Superior Court. Judge Donovan confirmed that the transcript of the plea colloquy contained the statutorily required notice and denied Sango–Dema's motion on February 23, 1999. Thereafter, Sango–Dema appealed to ruling to the Massachusetts Appeals Court. His appeal was dismissed on November 7, 2000.

I have serious doubts whether Sango–Dema's argument on this claim rooted primarily in state law raises the sort of issue appropriate for redress by a writ of habeas corpus. *See Mahadeo,* 226 F.3d at 6 n. 6 (habeas review is limited to challenges based on federal statutory interpretation and constitutional questions); *cf. United States v. Gonzalez,* 202 F.3d 20, 25 (1st Cir.2000) (holding that counsel's failure to advise a defendant of the collateral consequence of deportation is a legally insufficient basis for a plea withdrawal). In any event, in light of the state court rejection of the claim, which was upheld on appeal, without further evidence indicating that Sango–Dema was not informed of the immigration consequences of his 1994 guilty plea, this grounds for relief is a non-starter.

### D. Classification of Criminal Convictions

■ Secondly, Sango–Dema argues that his convictions for rape of a child and indecent assault and battery on a person over fourteen years old qualify only as "crimes of moral turpitude," and not as "aggravated felonies." As a result, argues the petitioner, he is eligible for various potential forms of relief from which aggravated felons are excluded. *See* INA § 208(b)(2)(A)(ii)(application for asylum not available to an alien convicted of "particularly serious crime")[4]; INA § 240A(b)(2)(D) (cancellation of removal

for battered children not available to alien convicted of aggravated felony); INA § 240A(a)(3) (same with regard to discretionary cancellation of removal).

As the BIA rightly noted, Sango–Dema's convictions for rape of a child and indecent assault and battery on a person over fourteen years old both fit squarely within the INA's existing definition of "aggravated felony." Under INA § 101, "aggravated felony" is defined to include "sexual abuse of a minor." INA § 101(43)(A); 8 U.S.C. § 1101(43)(A). This particular provision was added in 1996 as part of the IIRIRA's expansion of crimes qualifying as aggravated felonies. *See* IIRIRA § 321(a)(1). Although Sango–Dema's convictions date back to 1994, the statute makes clear that the expanded definition "shall apply to actions taken on or after the date of the enactment of this Act, *regardless of when the conviction occurred....* " IIRIRA § 321(c) (codified at 8 U.S.C. § 1101, Historical and Statutory Notes) (emphasis added). *See also Sousa,* 226 F.3d at 33 (expanded definition applies to convictions entered before IIRIRA's enactment).

■ Moreover, even assuming the expanded definition could *not* apply to prepassage convictions, Sango–Dema might *still* qualify as an aggravated felon as the law stood at the time of his state court guilty plea. In its decision, the BIA noted that Sango–Dema's conviction for indecent assault and battery would be rendered an "aggravated felony" because it is also a "crime of violence" within the meaning of INA § 101(43)(F); 8 U.S.C. § 1101(43)(F).

Under INA § 101(43) as it existed at the time of the 1994 conviction, the term "aggravated felony" included "any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years

---

4. Under INA § 208(b)(2)(B)(i), "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(B)(ii).

...."[5] 8 U.S.C. § 1101(43) (1994). In turn, 18 U.S.C. § 16 defines a "crime of violence" to include an offense "that is a felony and that, by its nature, involves a substantial risk that physical force against the person ... of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

Under Massachusetts law, lack of consent was an element of indecent assault on a person fourteen years or older at the time of Sango–Dema's conviction in 1994. *See Maghsoudi v. I.N.S.*, 181 F.3d 8, 15 (1st Cir.1999) (collecting cases). For this reason, the Second circuit has recently held that "any violation of Mass. Gen. L. ch. 256, § 13H, by its nature, presents a substantial risk that force may be used in order to overcome the victim's lack of consent and accomplish the indecent touching." *Sutherland v. Reno*, 228 F.3d 171, 176 (2nd Cir.2000). I agree with that court's conclusion that, because the victim's non-consent is a necessary element for conviction under Massachusetts indecent assault statute in question, the petitioner was convicted of a crime of violence within the meaning of 18 U.S.C. § 16(b).[6] *See id.* at 177.

■ The only remaining question on the classification of Sango–Dema's conviction is whether his three to five year suspended sentence qualifies as a "term of imprisonment imposed (regardless of any suspension of such imprisonment) [that] is at least 5 years." 8 U.S.C. § 1101(43) (1994). In a similar situation, the First Circuit stated that it was "not clear" whether a suspended 3 to 5 year sentence would satisfy this test. *Sousa*, 226 F.3d at 33. In the immigration context, some courts have concluded that any indeterminate sentence should be construed as the maximum for that sentence. *See Pichardo v. I.N.S.*, 104 F.3d 756, 759 (5th Cir.1997)(construing a non-suspended prison term of 11–1/2 months to 23 months as a term in excess of one year); *see Matter of D—*, Interim Dec. 3223, 1994 WL 284067 (BIA June 24, 1994) (interpreting Massachusetts law). Thus, while the caselaw in this circuit is uncertain on this technical point, Sango–Dema's three to five year suspended sentence for his conviction under Mass. Gen. L. ch. 256, § 13H must be considered a sentence of five years for purposes of INA § 101(43).

In the end, the criminal convictions at issue satisfy both pre- and post-IIRIRA standards for an "aggravated felony." To the extent Sango–Dema raises a constitutional or statutory challenge based on the potential retroactive effect of IIRIRA's expanded definition of "aggravated felony," that claim is meritless and must be dismissed.

### E. Eligibility to Apply for Discretionary Waiver

■ The most serious grounds for relief pressed by Sango–Dema is his claim for eligibility to apply for a discretionary waiver of removal under the law as it existed prior to the passage of IIRIRA.

At the time of his state court guilty pleas in 1994, a petition for discretionary waiver under INA § 212(c) was available to aliens deportable because of aggravated felony convictions, so long as the term of incarceration actually served for such a conviction was less than five years. *See* 8 U.S.C. § 1182(c) (1995). Unlike the determination of whether an alien qualifies as aggravated felon under INA § 101(43), which asks only the length of the sentence imposed, the key question under former

---

**5.** In 1996, IIRIRA expanded the definition "aggravated felon" by decreasing the length of sentence required for a "crime of violence" from five years to one year. *See* IIRIRA 321(a)(3) (codified at 8 U.S.C. § 1101(43)(F)).

**6.** Although none of the facts underlying Sango–Dema's crimes have been provided, the particulars of the commission of the crime are irrelevant to whether the conviction qualifies as a "crime of violence." *See Maghsoudi*, 181 F.3d at 14 ("The inherent nature of the crime or conviction, as defined in the criminal statute, is relevant in this determination; the particular circumstances of [the] acts and convictions are not.").

INA § 212(c) is the actual time spent in incarceration. *See Giusto v. I.N.S.*, 9 F.3d 8, 10 (2nd Cir.1993); *Matter of Ramirez–Somera*, 20 I. & N. Dec. 564, 566 (BIA 1992). The availability of the discretionary waiver changed in 1996, when such relief was amended by the passage of the Anti-terrorism and Effective Death Penalty Act of 1996 ("ADEPA"), Pub.L. No. 104–132, 110 Stat, 1214 (1996) and later repealed by IIRIRA. *See* ADEPA § 440(d) (making "aggravated felons" ineligible for discretionary relief); IIRIRA § 304 (repealing INA § 212(c) and adding new form of relief, "cancellation of removal," under INA § 240A that is unavailable to aliens convicted of "aggravated felonies").

Sango–Dema argues the new waiver provisions cannot be applied retroactively to bar his application for a waiver under pre-ADEPA INA § 212(c). In addressing this issue, the First Circuit recently has held that an alien pleading guilty to crimes prior to the passage of ADEPA may be eligible under certain circumstances to apply for discretionary waiver as it existed under pre-ADEPA § 212(c). *See Mattis v. Reno*, 212 F.3d 31, 40 (1st Cir.2000). However, in order to qualify, the alien must show that he actually and reasonably relied upon the existence of the waiver provision in making the decision to enter a guilty plea.[7] *See id.*

The First Circuit has stated that "questions of whether there was actual reliance and whether it was reasonable are questions of fact to be resolved by the IJ." *Id.* For this reason, a remand to the IJ is

necessary to determine Sango–Dema's eligibility to apply for discretionary waiver under former INA § 212(c). Although the First Circuit has twice held that such a remand is not automatically available, *see id.* at 41 and *Almon v. Reno*, 214 F.3d 45, 47 (1st Cir.2000), I believe the circumstances presented here are different and that a remand is warranted.

First, in both *Mattis* and *Almon*, the petitioners' deportation orders were based on numerous felony convictions. *See Mattis*, 212 F.3d at 41 (alien's deportation order was based on five separate convictions, all of which qualified as either aggravated felonies or controlled substance offenses); *Almon*, 214 F.3d at 47 (alien pleaded guilty to three crimes in less than two years, at least two of which are arguably aggravated felonies). As the court in *Mattis* noted, "[w]ith each succeeding guilty plea . . . any argument that the plea was in actual reliance on the availability of § 212(c) relief becomes more and more tenuous." 212 F.3d at 41. Conversely, a claim of actual and reasonable reliance such as Sango–Dema's, which is based on only a guilty plea to two charges that arise from the same occurrence, must be deemed more plausible.

Secondly, the petitioners in both *Mattis* and *Almon* were represented by counsel. Thus, in each case, the court had before it a clear and professionally prepared record that would allow a reasoned assessment of whether the petitioners' claimed reliance was actual and reasonable. Here, arguing

---

**7.** As one might predict, the circuit courts of appeals have adopted widely differing positions with respect to the effect of ADEPA § 440(d) and IIRIRA § 304 on guilty pleas entered prior to the passage of both statutes. Some courts have held that it is categorically impermissible to apply ADEPA § 440(d) to guilty pleas entered before ADEPA's enactment and that no additional evidence of reliance on the possibility of INA § 212(c) relief is required. *See Tasios v. Reno*, 204 F.3d 544, 552 n. 13 (4th Cir.2000); *St. Cyr*, 229 F.3d 406, 418 (2nd Cir.). Courts at the opposite pole have held that ADEPA § 440(d) should be applied to pre-ADEPA convictions regard-

less of a showing of reliance. *See DeSousa v. Reno*, 190 F.3d 175, 185 (3rd Cir.1999); *Requena–Rodriguez v. Pasquarell*, 190 F.3d 299, 306 (5th Cir.1999); *Jurado–Gutierrez v. Greene*, 190 F.3d 1135, 1147 (10th Cir.1999), *cert. denied Palaganas–Suarez v. Greene*, —— U.S. ——, 120 S.Ct. 1539, 146 L.Ed.2d 352 (2000). And still other courts have essentially adopted the same "middle ground" standard as the First Circuit which requires a showing of actual and reasonable reliance on the existence of the waiver provisions at the time of the guilty plea. *See Jideonwo v. I.N.S.*, 224 F.3d 692, 700 (7th Cir.2000); *Magana–Pizano v. I.N.S.*, 200 F.3d 603, 611 (9th Cir.1999).

pro se, Sango–Dema has certainly raised the issue that elimination of INA § 212(c)'s waiver provisions "was not part of the deal" to which he agreed upon pleading guilty. Given his legal skills and his continued incarceration, however, he has not been allowed the adequate opportunity to develop his arguments that his reliance on possible waiver of deportation under former INA § 212(c) was both actual and reasonable.

## F. Length of detention

■ Sango–Dema has also raised a challenge to the length of his detention. He has been held in custody since he was served with the administrative notice to appear on November 24, 1998. Over the nearly two year period of his detention, he has been incarcerated in correctional facilities in Plymouth, Massachusetts; Hanover, New Hampshire; and Cranston, Rhode Island.

While I am deeply troubled by the length of Sango–Dema's detention, it is not a valid basis for habeas relief here, where the Petitioner is the cause for the long delay. It is true that there is a lively debate among federal courts concerning the permissibility of the indefinite detention of removable criminal aliens. *Compare Ma v. Reno*, 208 F.3d 815 (9th Cir. 2000) (holding INS lacks statutory authority to indefinitely detain aliens), *cert. granted*, —— U.S. ——, 121 S.Ct. 297, 148 L.Ed.2d 239 (2000), and *Hermanowski v. Farquharson*, 39 F.Supp.2d 148 (D.R.I. 1999) (indefinite detention violates substantive due process) with *Ho v. Greene*, 204 F.3d 1045 (10th Cir.2000) (Attorney General may permissibly detain alien indefinitely) and *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir.1999) (same), *cert. granted* —— U.S. ——, 121 S.Ct. 297, 148 L.Ed.2d 239 (2000). This line of cases, however, is inapposite to Sango–Dema's situation. In each of these indefinite detention cases, the petitioners were placed in deportation limbo because their coun-

tries of origin had refused to allow entrance to the aliens. In this case, the government states the primary obstacle to Sango–Dema's removal to Zimbabwe is his own refusal to cooperate with INS officials in securing the documentation necessary to permit his deportation and his own pursuit of litigation here and in state court.

Sango–Dema has refused to provide INS a passport and birth certificate. Petitioner claims these documents were reported missing to the Lynn Police Department in 1995. Nonetheless, Sango–Dema has also refused to communicate with officials at the Embassy of Zimbabwe. And finally, Sango–Dema has refused to complete any of the applications necessary to facilitate his return to his country of origin. Even if this Court were to agree with the courts recognizing a constitutional right to be free from indefinite detention by the INS, an alien cannot trigger such a right with his outright refusal to cooperate with INS officials.

If Sango–Dema cooperates with INS and the Embassy of Zimbabwe and is nonetheless denied entrance by his country of origin, then he may return to court seeking release from indefinite detention.[8] For now, however, his claims objecting to the length of his detention must fail.

## G. Designation of country for deportation

Petitioner also claims that he was not informed of his right to designate the country to which he would be deported pursuant to 8 U.S.C. § 1253(a); 8 C.F.R. § 242.17(c)(1). *See Bui v. I.N.S.*, 76 F.3d 268, 270 (9th Cir.1996). However, the record of the proceedings reveals that the IJ asked Sango–Dema to designate a country, and he declined the opportunity to do so. In lieu of a designation by the Petitioner, the IJ determined that he should be returned to his country of origin, Zimbabwe.

Sango–Dema is concerned about being deported to Zimbabwe because he claims to be "a noted political agitator." In his

8. I express no view on the constitutional or statutory merits of such a claim.

filings for this motion, Petitioner has included several newspaper and magazine clippings describing the volatile political and social situation in Zimbabwe, including reports of political tortures and executions. As noted above, Sango–Dema is ineligible to apply for asylum because he qualifies as having been convicted of an aggravated felony. Nonetheless, his concerns are well taken, and upon remand, Sango–Dema will have the opportunity to exercise his right to designate the country of his deportation. If, however, he again declines to designate a country, the IJ's earlier designation of Zimbabwe shall stand.

**H. Other grounds for petition**

Sango–Dema has offered several further grounds for relief on his petition. Each of these miscellaneous claims must fail.

■ One claim is that the petitioner was denied his right to counsel in the proceedings before the IJ. To begin with, "[n]o Sixth Amendment right to counsel is involved in deportation proceeding because they are civil and not criminal...." *Bernal–Vallejo v. I.N.S.*, 195 F.3d 56, 63 (1st Cir.1999). In addition, the record of Sango–Dema's hearing before the IJ tells a different story. At the beginning of the removal hearing, the IJ allowed a continuance of the proceedings to permit Sango–Dema the opportunity to secure counsel. When the hearing reconvened and Sango–Dema remained without counsel, the IJ offered him another continuance. Sango–Dema declined the offer and elected to proceed without counsel. Hence, Sango–Dema's petition on that ground must be denied.

Another claim is that the INS failed to inform the him of his right to consult with consular authorities as required by INS regulations. See 8 C.F.R. § 242.2(e) (1979). However, Sango–Dema has not shown any prejudice flowing from that violation. *See United States v. Rangel–Gonzales*, 617 F.2d 529, 530 (9th Cir.1980).

■ Sango–Dema also argues that he is not deportable because the name on the caption of his state court conviction reads "Sanso–Dema" instead of "Sango–Dema." Notably, he does not argue that the INS has got the wrong man. His objection is only to the incorrect spelling of his name, and, as such, it must be dismissed as frivolous.

All other claims that have been raised by Sango–Dema have been considered and must also be denied as either frivolous or beyond the scope of habeas relief available under § 2241.

### ORDER

For the reasons stated above, INS's motion for summary judgment (Docket No. 24) is **DENIED** and Sango–Dema's petition for a writ of habeas corpus (Docket No. 5) must be **GRANTED** to the extent described in this opinion. This matter will be **REMANDED** to the Immigration Judge for consideration of Sango–Dema's petition for discretionary waiver under former INA § 212(c). At that point, Sango–Dema will also be given the opportunity to designate a country of deportation pursuant to 8 U.S.C. § 1253(a).