**UNITED STATES of America**

v.

**Erasmo Angelo LEPORE, Defendant.**

**No. CRIM.A.03–10158–WGY.**

United States District Court,
D. Massachusetts.

Feb. 12, 2004.

184

Nadine Pellegrini, United States Attorney's Office, Boston, MA, for Plaintiff.

Elizabeth A. Lunt, Zalkind, Rodriquez, Lunt & Duncan LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

The defendant, Erasmo Angelo Lepore ("Lepore"), is charged with illegal re-entry as a deported alien, 8 U.S.C. § 1326, and misuse of a social security number, 42 U.S.C. § 408. In this Motion to Dismiss Count One of the Indictment, Lepore collaterally attacks his underlying 1999 deportation order. To succeed, Lepore must show (1) that he exhausted all administrative remedies, (2) that he was improperly deprived of judicial review, and (3) that his deportation order was fundamentally unfair. 8 U.S.C. § 1326(d).

#### A. Facts

For the most part, the relevant facts are not in dispute.

On January 18, 1990, Lepore was convicted of indecent assault and battery on a person fourteen or older, pursuant to Mass. Gen. Laws ch. 265, § 13H, and sentenced to one year in prison. Gov't's Opp'n to Def.'s Mot. to Dismiss [Doc. No. 17], Ex. D. Lepore has provided evidence (in the form of an affidavit from his attorney in that case) that the conviction resulted from a plea agreement, *see* Aff. Of James J. Cipoletta, Esq., and although the government contests this, *see* Gov't's Supp. Opp'n to Def.'s Mot. to Dismiss [Doc. No. 23], at 8–9, the Court holds that the 1990 conviction did in fact result from a plea agreement.

Before the 1990 conviction, Lepore was convicted in 1984 of indecent assault and battery on a child under the age of four-

teen, and in 1986 and 1987 was convicted on two separate occasions for open and gross lewdness, and on one occasion for indecent exposure. *See* Gov't's Opp'n to Def.'s Mot. to Dismiss, Ex. D; Gov't's 2d Supp. Opp'n to Def.'s Mot. to Dismiss [Doc. No. 29], at 2; *see also* Def.'s Resp. to Gov't's 2d Supp. Opp'n [Doc. No. 30], at 1 (acknowledging the 1987 convictions).[1] On February 19, 1999, he pled guilty to indecent assault and battery on a person fourteen or over and to two counts of open and gross lewdness and lascivious behavior. *Id.*, Exs. B & D.

On September 14, 1999, Lepore appeared before Immigration Judge Shapiro ("hearing officer"). Gov't's Opp'n to Def.'s Mot. to Dismiss, Ex. C. The hearing officer explained to Lepore that the government sought to deport him because his 1990 conviction for indecent assault and battery, a crime of violence for which he was sentenced to one year in prison, rendered him an aggravated felon.[2] *Id.* at 3, ¶¶ 8–19. The hearing officer advised Lepore of his right to counsel, his right to call witnesses, and his right to cross-examine hostile witnesses. *Id.* at 3–5. The hearing officer also advised Lepore that he could appeal any decision to the Board of Immigration Appeals ("Board") in Washington. *Id.* at 5, ¶¶ 2–6. Lepore stated that he wished to speak for himself, and called no witnesses. *Id.* at 4, ¶ 9. In response to various questions from the hearing officer, Lepore mentioned his family and the fact that he suffered from depression. *Id.* at 6, ¶¶ 11–14. He implied that his various crimes could be attributed to his depression, and added that he was currently seeing a doctor and "doing great." *Id.* at 7, ¶¶ 11–13.

---

1. Both the government and Lepore refer to all of the convictions in the years 1986 and 1987 as being in 1987, but the record suggests otherwise. The exact date of the convictions has no effect on the outcome of this case.

2. Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act provides that "any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

The hearing officer interrupted him at this point, stating that "I don't have any discretion to let you stay here. The new laws passed in 1996 say that someone who has been convicted of a crime like this, the only thing I can do is order you to be deported to Italy, even if you're a changed person and create great hardship on your family.... So I don't have any alternative, but to order you to be deported." *Id.* at 7, ¶¶ 14–22. Finally, the hearing officer advised Lepore that he could appeal the decision to the Board, but Lepore waived his right to an appeal. *Id.* at 7–8.

Lepore returned to the United States after being removed to Italy, and was arrested in front of his Chelsea, Massachusetts apartment on or about April 9, 2003. Def.'s Mem. in Supp. of Mot. to Suppress [Doc. No. 12], at 1. Now charged with illegal reentry as a deported alien, 8 U.S.C. § 1326, Lepore collaterally attacks his 1999 deportation order.

## II. DISCUSSION

In *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that a criminal defendant charged with illegal reentry may collaterally attack the prior deportation order which has become an element of the criminal offense. *Id.* at 837–39, 107 S.Ct. 2148. Specifically, the Supreme Court held that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838, 107 S.Ct. 2148 (citing *Estep v. United States,* 327 U.S. 114, 121–22, 66 S.Ct. 423, 90 L.Ed. 567 (1946), and *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)).

After *Mendoza–Lopez* was decided, Congress amended 8 U.S.C. § 1326 to provide that an alien charged with illegal reentry may only collaterally attack an underlying deportation order upon a showing that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). These three elements are conjunctive, so Lepore must satisfy each to attack successfully his 1999 deportation order. *See United States v. Roque–Espinoza,* 338 F.3d 724, 728 (7th Cir.2003); *United States v. Wilson,* 316 F.3d 506, 509 (4th Cir.2003), *cert. denied,* —— U.S. ——, 123 S.Ct. 1959, 155 L.Ed.2d 871 (2003); *United States v. Fernandez–Antonia,* 278 F.3d 150, 157 (2d Cir.2002).

Lepore makes two major arguments in support of his collateral attack: First, he argues that he did not commit an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(F) and that, as a result, he was never actually deportable. Second, he argues that he was eligible for discretionary relief from deportation, but the hearing officer failed to advise him of his rights, such that his hearing violated his constitutional procedural due process rights.

## A. Indecent Assault and Battery on a Person Fourteen or Older Is a "Crime of Violence" Under 18 U.S.C. § 16

■ Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), "any alien who is convicted of an aggravated felony at any time after admission is deportable." The term "aggravated felony" includes, among other

things, "a crime of violence." 8 U.S.C. § 1101(a)(43)(F). A "crime of violence" is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

In 1990, Lepore was convicted of indecent assault and battery on a person fourteen or older, Mass. Gen. Laws ch. 265, § 13H. This conviction served as the basis for Lepore's deportation. Lepore argues that indecent assault and battery on a person fourteen or older is not a "crime of violence" and that, as a result, he was not an "aggravated felon" subject to deportation.

Massachusetts General Laws Chapter 265, Section 13H does not set forth the elements of a violation for indecent assault and battery on a person fourteen or older, but the Massachusetts Appeals Court has described the crime as follows:

A touching is indecent when, judged by the normative standard of societal mores, it is violative of social and behavioral expectations, in a manner which [is] fundamentally offensive to contemporary moral values ... [and] which the common sense of society would regard as immodest, immoral, and improper. So defined, the term "indecent" affords a reasonable opportunity for a person of ordinary intelligence to know what is prohibited.

*Commonwealth v. Lavigne*, 42 Mass.App. Ct. 313, 314–15, 676 N.E.2d 1170 (1997) (alteration in original) (citations and internal quotation marks omitted); *see also Sutherland v. Reno*, 228 F.3d 171, 176 (2d Cir.2000) (quoting the *Lavigne* passage); *Maghsoudi v. INS*, 181 F.3d 8, 14–15 (1st Cir.1999) (same); *Commonwealth v. Mosby*, 30 Mass.App.Ct. 181, 184, 567 N.E.2d 939 (1991) (citing *Commonwealth v. Perretti*, 20 Mass.App.Ct. 36, 43–44, 477 N.E.2d 1061 (1985)) (defining the crime similarly).

The first issue presented here is whether indecent assault and battery on a person fourteen or older is a "crime of violence" because it "involves a substantial risk that physical force ... may be used in the course of committing the offense." 18 U.S.C. § 16(b).[3] Several courts have addressed this issue and have concluded that indecent assault and battery on a person fourteen or older does indeed involve a "substantial risk of force," and as a result, qualifies as a "crime of violence" under 18 U.S.C. § 16(b). *See Sutherland v. Reno*, 228 F.3d 171, 175–76 (2d Cir.2000); *Sango–Dema v. INS*, 122 F.Supp.2d 213, 219 (D.Mass.2000) (Saris, J.).

The First Circuit has held that lack of consent is an element of indecent assault on a person fourteen or older under Massachusetts General Laws Chapter 265, Section 13H. *Maghsoudi*, 181 F.3d at 15 (1st Cir.1999) (citing *Commonwealth v. Burke*, 390 Mass. 480, 484 n. 4, 457 N.E.2d 622 (1983), and *Commonwealth v. Rowe*, 18 Mass.App.Ct. 926, 926–27, 465 N.E.2d 1220 (1984)).

In *Sutherland*, the Second Circuit agreed that lack of consent is a "requisite

---

**3.** The government does not argue that indecent assault and battery is a "crime of violence" under the definition in 18 U.S.C. § 16(a)—that is, "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

element of a § 13H violation." 228 F.3d at 176 (citing *Maghsoudi*, 181 F.3d at 15). The Second Circuit took this reasoning one step further, holding that a Section 13H violation necessarily involved a substantial risk of violence: "[W]e are persuaded that any violation of Mass. Gen. Laws ch. 265, § 13H, by its nature, presents a substantial risk that force *may* be used in order to overcome the victim's lack of consent and accomplish the indecent touching." *Sutherland*, 228 F.3d at 176 (citing *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir.1992)). Thus, at least in the Second Circuit, indecent assault and battery on a person fourteen or older, under Mass. Gen. Laws ch. 265, § 13H, is a "crime of violence" within the meaning of 18 U.S.C. § 16.

Although there is no First Circuit case so holding, Judge Saris of this District adopted the Second Circuit's approach in *Sango–Dema*. Sango–Dema had pled guilty to rape of a child under Mass. Gen. Laws ch. 265, § 23, and indecent assault and battery on a person fourteen years or older under Mass. Gen. Laws ch. 265, § 13H. 122 F.Supp.2d at 215. After Sango–Dema served his sentence, the government charged him with removability under the Immigration and Nationality Act as an aggravated felon. *Id.* at 216. The hearing officer issued a decision that he was deportable and ineligible for any relief from removal, and the Board dismissed his appeal. *Id.* The case came before Judge Saris on Sango–Dema's petition for a writ of habeas corpus. *Id.* Judge Saris examined whether Sango–Dema's conviction for indecent assault under Mass. Gen. Laws ch. 265, § 13H qualified as a "crime of violence" within the meaning of 18 U.S.C. § 16, and held that it did, adopting the Second Circuit's reasoning in *Sutherland*. *Sango–Dema*, 122 F.Supp.2d at 219 ("I agree with that court's conclusion that, because the victim's non-consent is a nec-essary element for conviction under [the] Massachusetts indecent assault statute in question, the petitioner was convicted of a crime of violence within the meaning of 18 U.S.C. § 16(b)." (citing *Sutherland*, 228 F.3d at 177)).

Despite these cases, Lepore argues that indecent assault and battery does not always qualify as a "crime of violence" under 18 U.S.C. § 16(b). Lepore bases this argument on the bifurcation of Massachusetts battery law, which recognizes both (1) harmful and (2) offensive batteries. *See Burke*, 390 Mass. at 482, 457 N.E.2d 622 (1983). Harmful batteries are those done "with such violence that bodily harm is likely to result." *Id.* at 482, 457 N.E.2d 622 (1983) (quoting *Commonwealth v. Farrell*, 322 Mass. 606, 620, 78 N.E.2d 697 (1948)) (internal quotation marks omitted). "Consent thereto is immaterial." *Id.* (citing *Farrell*, 322 Mass. at 620, 78 N.E.2d 697). Offensive batteries, on the other hand, are an "affront to the victim's personal integrity," but are not necessarily harmful in the physical sense, and thus by definition can only take place without the victim's consent. *Id.* at 483, 457 N.E.2d 622; *see also Commonwealth v. De La Cruz*, 15 Mass.App.Ct. 52, 59, 443 N.E.2d 427 (1982) (holding that force and violence are not necessary elements of criminal assault and battery). Basically, Lepore characterizes offensive batteries as "fleeting, offensive touchings, committed without force, violence, compulsion, constraint or pressure," that "do not by their nature involve a *substantial* risk that force will be used in committing the offense." Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 14], at 8–9 (emphasis in original).

Lepore attempts to distinguish *Sutherland* and *Sango–Dema* by arguing that neither the Second Circuit nor Judge Saris considered the "unwelcome sexual proposition" type of indecent assault and battery.

*Id.* at 9. In fact, however, the petitioner in *Sutherland* was convicted of violating Mass. Gen. Laws ch. 265, § 13H for reaching down the pajama pants of his 19–year old stepdaughter. *Sutherland,* 228 F.3d at 173.[4] Furthermore, the Second Circuit considered, and rejected, the argument that Section 13H could be divided into violent and non-violent crimes. "[T]he Board correctly adhered to its categorical approach in this case because ... Mass. Gen. Laws ch. 265, § 13H is not divisible. *All § 13H violations are, by their nature, 'crimes of violence' under 18 U.S.C. § 16(b)* because the non-consent of the victim is a necessary element of every violation." *Sutherland,* 228 F.3d at 177 n. 5 (emphasis added). Since the court concluded that *all* Section 13H violations are "crimes of violence," the "type" of battery considered does not factor into the analysis.

Lepore also attempts to distinguish *Sango–Dema* by arguing that Judge Saris ignored the relevant Massachusetts case law. Judge Saris, citing *Sutherland,* concluded that all batteries involved a lack of consent, and therefore involved a substantial risk of violence. 122 F.Supp.2d at 219. Even if Judge Saris's statement of Massachusetts law were incorrect, it would only be so in regard to "harmful batteries." Even if not all batteries involve a lack of consent, all "offensive batteries" do, and Judge Saris's reasoning with regard to cases like Lepore's, which fall into this category, is certainly correct.

Moreover, Judge Saris in fact accurately stated the relevant Massachusetts law. Massachusetts law simply implies that one cannot consent to a violent battery, and

this is why consent is "immaterial" in such cases. *Cf. Commonwealth v. Appleby,* 380 Mass. 296, 310–11, 402 N.E.2d 1051 (1980) (applying this analysis in an assault and battery with a dangerous weapon case under Mass. Gen. Laws ch. 265, § 15A, and noting that the fact that the assault was in the context of consensual sexual conduct was immaterial). One can debate whether what effectively is a conclusive determination of non-consent in this class of cases is an evidentiary issue or a substantive rule of law, *see, e.g., Michael H. v. Gerald D.,* 491 U.S. 110, 119–20, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (discussing this question with regard to California's presumption of legitimacy), but Judge Saris's apparent choice to treat it as the former is perfectly reasonable.

The Court hereby adopts the reasoning of *Sutherland* and *Sango–Dema,* and holds that indecent assault and battery on a person fourteen or older under Mass. Gen. Laws ch. 265, § 13H is a "crime of violence" within the meaning of 18 U.S.C. § 16. Given this holding, the Court need not analyze the three prerequisites to collateral attack, 8 U.S.C. § 1326(d), with regard to this argument.

**B. Section 212(c) Eligibility and *INS v. St. Cyr***

Lepore's second major argument is that he was improperly denied an opportunity to apply for discretionary relief from deportation under Section 212(c) of the Immigration and Nationality Act of 1952 (previously codified at 8 U.S.C. § 1182(c)). The recent history of this Section, and its applicability to aggravated felons, is labyrinthine and requires a brief discussion.

---

4. Admittedly, Lepore further narrows the class of cases he thinks should be excluded from the "crime of violence" category to those involving touching "of a clothed part of a person's body, or of a person's clothing

alone." Def.'s Mem. in Supp. of Mot. to Dismiss, at 8. The Court cannot see how violence would be sufficiently less likely in such cases than in those involving touching of skin.

Before its repeal in 1996, Section 212(c) gave the Attorney General broad discretion to admit otherwise excludable aliens into the United States. *INS v. St. Cyr.*, 533 U.S. 289, 294–95, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The Section read in relevant part: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." Former 8 U.S.C. § 1182(c) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 304(b), 110 Stat. 3009, 3009–597 (1996)); *see also St. Cyr*, 533 U.S. at 294–95, 121 S.Ct. 2271. Read literally, Section 212(c) applied only to exclusion proceedings, but it has been interpreted "to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation." *St. Cyr*, 533 U.S. at 295, 121 S.Ct. 2271 (quoting former 8 U.S.C. § 1182(c)) (internal quotations omitted). If the Board awarded an alien Section 212(c) relief, it cancelled the deportation hearings and allowed the alien to remain in the United States as a permanent resident. *Id.*

In 1990, Congress passed the Immigration Act of 1990, which made all aggravated felons that had served at least five years in prison ineligible for Section 212(c) relief. *See* Pub.L. No. 101–649, § 511, 104 Stat. 4978, 5052 (1990) (amending 8 U.S.C. § 1182(c)). In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which made *all* aggravated felons ineligible for Section 212(c) relief. *See* Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, 1277 (1996) (amending 8 U.S.C. § 1182(c)). Later in 1996, Congress passed IIRIRA, which eliminated the Section 212(c) waiver entirely, and replaced it with a new section (8 U.S.C. § 1229b) that gives the Attorney General authority to cancel removal for certain inadmissible or deportable aliens. *See* Pub.L. No. 104–208, § 304(b), 110 Stat. at 3009–594, 3009–597. IIRIRA simultaneously amended the definition of "aggravated felony" to include any "crime of violence" punished by one year or more in prison. *See* Pub.L. No. 104–208, §§ 321(a)(3) & 322(a)(2)(a), 110 Stat. 3009 (amending 8 U.S.C. § 1101(a)(43)(F)).

The Attorney General interpreted both AEDPA and IIRIRA as having retroactive effect. *See Matter of Soriano*, 21 I. & N. Dec. 516, 537–38, 1996 WL 426888 (Board June 27, 1996/Att'y Gen. Feb. 21, 1997). Under this policy, all aggravated felons convicted prior to AEDPA's effective date were ineligible for Section 212(c) relief. *Id.; see St. Cyr*, 533 U.S. at 297, 121 S.Ct. 2271. In 2001, the Supreme Court reversed this interpretation, holding that AEDPA and IIRIRA did not retroactively eliminate Section 212(c) relief for aggravated felons convicted pursuant to plea agreements before the statutes went into effect, if such relief would have been available under the law at the time of their pleas. *St. Cyr*, 533 U.S. at 326, 121 S.Ct. 2271.

*St. Cyr* concerned Enrico St. Cyr, a Haitian citizen and lawful permanent resident of the United States. 533 U.S. at 293, 121 S.Ct. 2271. In 1996, St. Cyr pled guilty to selling a controlled substance and became deportable. *Id.* At the time of his plea, which pre-dated AEDPA, he was eligible for a Section 212(c) waiver. *Id.* When his removal proceedings commenced in 1997, however, both AEDPA and IIRIRA had taken effect and, under the Attorney General's interpretation, St. Cyr had been rendered ineligible for discretionary relief. *Id.*

St. Cyr filed a habeas corpus petition, arguing that the relief-eliminating provisions of AEDPA and IIRIRA did not preclude Section 212(c) relief for aliens who had pled guilty to a deportable crime prior to their enactment. *Id.* The Supreme Court agreed, holding that the relief-eliminating provisions of AEDPA and IIRIRA did not apply retroactively. *Id.* at 326, 121 S.Ct. 2271. In particular, the Supreme Court held that Section 212(c) relief "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326, 121 S.Ct. 2271.

Building upon *St. Cyr,* Lepore argues that the hearing officer here failed to advise him of his Section 212(c) eligibility, thus depriving him of judicial review and rendering his deportation order fundamentally unfair. Lepore also argues that the hearing officer cut him off when he attempted to present a case for waiver of deportation,[5] thereby depriving him of due process. The government contends that Lepore cannot satisfy the three prerequisites to a collateral attack found in 8 U.S.C. § 1326(d).

Since Lepore must satisfy all three elements of 8 U.S.C. Section 1326(d), *Fernandez–Antonia,* 278 F.3d at 157, the Court addresses each in turn.

**1. Exhaustion of Administrative Remedies**

 To attack a deportation order collaterally, a defendant must have exhausted his available administrative remedies. 8 U.S.C. § 1326(d)(1). Whereas judicially imposed exhaustion requirements are prudential and subject to a number of exceptions, statutory requirements are jurisdictional, and absent statutory specification, are subject to very few exceptions. *See Sousa v. INS,* 226 F.3d 28, 31–32 (1st Cir.2000); *see also Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," in a situation where "providing otherwise" consisted solely in the failure of 42 U.S.C. § 1997e(a) (the Prison Litigation Reform Act's exhaustion requirement) to mention any exceptions); *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (noting that judicially imposed exhaustion requirements are prudential and that statutory ones are juris-

---

**5.** Lepore's Section 212(c) case consisted of the following comments:

THE COURT: Okay. And do you concede that that conviction renders you susceptible to being removed from the United States?
MR. LEPORE: If I could say something, Your Honor. Back in 1990, I would have said yes. But since and I (unintelligible) myself I suffer from depression back then, which (unintelligible) my wife and kids—
Tr. 6, ¶¶ 11–14, *reprinted in* Gov't's Opp'n to Def.'s Mot. to Dismiss, Ex. C.
And later,
THE COURT: ... What are you doing in jail, now?
MR. LEPORE: It's a 1996 crime, Your Honor, for indecent exposure.
THE COURT: Okay.
MR. LEPORE: Which again, the depression kicked back in. I've been under doctor's care for two years now, which I'm doing great. And you know—
THE COURT: Well, in this kind of case, I don't have any discretion to let you stay here. The new laws passed in 1996 say that someone who has been convicted of a crime like this, the only thing I can do is order you to be deported to Italy, even if you're a changed person and create great hardship on your family.
*Id.* at 7, ¶¶ 7–19.

dictional); *Beharry v. Ashcroft,* 329 F.3d 51, 62 (citing *McCarthy,* 503 U.S. at 146–49, 112 S.Ct. 1081) (listing four exceptions to judicially imposed exhaustion requirements).

The First Circuit has explicitly recognized an exception to the exhaustion requirement, however, "where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor." *Sousa v. INS,* 226 F.3d 28, 32 (1st Cir.2000), (citing *Bernal–Vallejo v. INS,* 195 F.3d 56, 64 (1st Cir.1999), and *Ravindran v. INS,* 976 F.2d 754, 762 (1st Cir.1992)); *see also Booth,* 532 U.S. at 736, 121 S.Ct. 1819 (recognizing that even a statutory exhaustion requirement would not require resort to administrative remedies "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint"). The Board lacked any power to overturn the Attorney General's erroneous interpretation of the relevant statutes, much less to pass on the constitutional questions regarding the Attorney General's interpretation, *see Ravindran,* 976 F.2d at 762, so it "lack[ed] authority to provide any relief."

In the factually similar case of *United States v. Copeland,* 228 F.Supp.2d 267 (E.D.N.Y.2002), a defendant charged with illegal reentry collaterally attacked his underlying deportation order. *Id.* at 271. Copeland, the defendant, had been deported on the basis of several 1995 convictions for possession of a controlled substance and for criminal possession of a weapon. *Id.* at 269. His deportation hearing took place in 1996, and the hearing officer, applying the then-standing interpretation of AEDPA, ruled that Copeland was an aggravated felon and ineligible for Section 212(c) relief. *Id.* Copeland waived his right to an administrative appeal and the

hearing officer ordered him deported. *Id.* Copeland was arrested again one year later and charged with illegal reentry. *Id.* at 270. He moved to dismiss his indictment on the grounds that his 1996 deportation hearing was unlawful. *Id.* at 268.

The Eastern District held that Copeland's collateral attack was not barred by his failure to appeal the deportation order to the Board. It noted that the exhaustion requirement "does not have to be met when making such an appeal would be futile because the body being appealed to lacks power—or believes that it lacks the power—to resolve the matter in the applicant's favor." *Id.* at 271 (citing *Sousa,* 226 F.3d at 32); *see also Bernal–Vallejo,* 195 F.3d at 64 (noting that the exhaustion rule "is subject to the caveat that the Board must have the power to address the matter as to which exhaustion is claimed").

The Eastern District held:

Although the defendant did not appeal to the Board of Immigration Appeals from the decision of the Immigration Judge, any attempt to do so would have been futile because at the time of his deportation, AEDPA and IIRIRA were being interpreted by INS in a manner that would have automatically precluded relief. The defendant therefore need not have engaged in a futile attempt to appeal his order of deportation.

*Copeland,* 228 F.Supp.2d at 271.

■ Lepore is in exactly the same position as Copeland. At the time of his deportation hearing, the Attorney General incorrectly believed that AEDPA and IIRIRA barred discretionary relief for aggravated felons. *See Soriano,* 21 I. & N. Dec. at 537–38. The Board was bound by this erroneous interpretation, and lacked any discretion to grant Lepore a Section 212(c) waiver. *Id.* Had Lepore filed an administrative appeal on these grounds, the Board would have dismissed it. As such, an ad-

ministrative appeal would have been futile, and 8 U.S.C. § 1326(d)(1) does not bar Lepore's collateral attack. *See Bernal–Vallejo,* 195 F.3d at 64.[6]

■ Moreover, the Ninth Circuit has held that a defendant's failure to exhaust cannot bar collateral review of a deportation proceeding when the waiver of the right to an administrative appeal was not considered and intelligent. *United States v. Ubaldo–Figueroa,* 347 F.3d 718, 726 (9th Cir.2003), (citing *United States v. Muro–Inclan,* 249 F.3d 1180, 1182 (9th Cir.2001), *cert. denied sub nom. Vidrio–Aleman v. United States,* 534 U.S. 879, 122 S.Ct. 180, 151 L.Ed.2d 125 (2001)); *see also United States v. Leon–Paz,* 340 F.3d 1003, 1005–06 (9th Cir.2003). In *Ubaldo–Figueroa,* a defendant charged with illegal reentry collaterally attacked his underlying deportation order. 347 F.3d at 723. Although the defendant had not filed an administrative appeal, the Ninth Circuit noted that he was "exempted from the exhaustion requirement in 8 U.S.C. § 1326(d)(1) because the [immigration judge] did not inform him that he was eligible for relief from deportation.... We do not consider an alien's waiver of his right to appeal his deportation order to be 'considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the Hearing officer fails to advise the alien of this possibility and give him the opportunity to develop the issue.'" *Id.* at 726, (quoting *United States v. Muro–Inclan,* 249 F.3d at 1182) (internal quotation marks omitted); *cf. United States v. Perez,* 330 F.3d 97, 104 (2d Cir. 2003) (holding that a deportation proceeding was "fundamentally unfair" when ineffective assistance of counsel resulted in an alien who was "eligible for § 212(c) relief and could have made a strong showing in support of such relief" failing to apply for waiver).

As in *Ubaldo–Figueroa,* the hearing officer here neglected to inform Lepore that he was eligible for Section 212(c) relief (he could not have done otherwise, given the Attorney General's erroneous interpretation of the governing statutes). As a result, the waiver of Lepore's right to an appeal was not considered or intelligent and he is exempt from the exhaustion requirement of 8 U.S.C. § 1326(d)(1).

### 2. Deprivation of Judicial Review

■ Lepore must also show that the 1999 deportation proceeding improperly deprived him of judicial review. 8 U.S.C. § 1326(d)(2). In *Mendoza–Lopez,* the Supreme Court declined to "enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review." 481 U.S. at 839 n. 17, 107 S.Ct. 2148. Nonetheless, the facts of that case are illustrative.

On October 30, 1984, the two defendants in *Mendoza–Lopez* appeared at a group deportation proceeding. 481 U.S. at 830, 107 S.Ct. 2148. The district court held that at the hearing, the defendants did not understand the proceedings, and in particular did not understand about their eligibility for Section 212(c) relief. *Id.* at 831–32 n. 4, 107 S.Ct. 2148. The hearing officer did nothing to alleviate this confusion, and in fact contributed to it, but he ordered the defendants deported without explaining matters any further. *Id.* On December 12, 1984, both defendants were arrested in Lincoln, Nebraska and subsequently were charged with illegally reentering the Unit-

---

**6.** The Court uses the word "futile" in a narrow sense, to refer to cases where the Board is powerless to address a particular matter. The "futility" exception in a judicially created exhaustion regime would include a broader class of cases. *See McCarthy,* 503 U.S. at 147–48, 112 S.Ct. 1081.

ed States in violation of 8 U.S.C. § 1326. *Id.* at 830–31, 107 S.Ct. 2148. The two defendants moved to dismiss their indictments, arguing that they were denied fair deportation hearings because the hearing officer allowed them unknowingly to waive their right to apply for suspension of deportation. *Id.* at 831, 107 S.Ct. 2148.

The Supreme Court held that the hearing officer deprived the defendants of judicial review by failing to advise them of their rights:

> The Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation. Because the waivers of their rights were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding. The Government may not, therefore, rely on those orders as reliable proof of an element of a criminal offense.

*Id.* at 840, 107 S.Ct. 2148.

Other courts have also found a deprivation of judicial review when a hearing officer fails to advise a defendant of the availability of Section 212(c) relief. *See United States v. Garcia–Jurado*, 281 F.Supp.2d 498, 504 (E.D.N.Y.2003) ("The courts have also found deprivation where, because of an administrative judge's error or inadequate counsel, an alien was inadequately informed of his right to appeal or seek judicial review."); *United States v. Calderon*, No. 02–CR–0691, 2003 WL 1338943, at *6 (E.D.N.Y. Jan. 9, 2003) ("misinforming an alien as to the availability of discretionary relief is a procedural error so fundamental that it functionally deprives an alien of judicial review."); *United States v. Perez*, 213 F.Supp.2d 229, 232–33 (E.D.N.Y.2002), *aff'd* 330 F.3d 97 (2d Cir. 2003) (similar; collecting cases).

As in *Mendoza–Lopez*, here the hearing officer did not advise Lepore that he was eligible for Section 212(c) relief. In fact, not only was the hearing officer silent on the potential availability of 212(c) relief, he affirmatively told Lepore that there was *no* potential avenue of relief, discretionary or otherwise, saying that "in this kind of case, I don't have any discretion to let you stay here ... [, and] the only thing I can do is order you to be deported to Italy." Tr. 7, ¶¶ 7–19, *reprinted in* Gov't's Opp'n to Def.'s Mot. to Dismiss, Ex. C. As a result, Lepore's waiver of his right to an appeal was not considered or intelligent and he was improperly deprived of judicial review of his deportation proceeding.

The government, citing *United States v. Aguirre–Tello*, 324 F.3d 1181 (10th Cir. 2003), argues that a hearing officer need only advise a defendant about Section 212(c) relief when armed with sufficient information to trigger knowledge of eligibility. According to the government, the hearing officer did not know that Lepore was eligible for a Section 212(c) waiver, and therefore was not required to inform him on the matter. The government misreads *Aguirre–Tello*, but the Court need not explore the issue, because that opinion is now obsolete, having been vacated upon rehearing en banc, *United States v. Aguirre–Tello*, 353 F.3d 1199 (10th Cir. 2004), in an opinion that took a narrower view of an alien's rights in this context. This Court need look no further than *Mendoza–Lopez*, however, for a refutation of the government's argument. The Supreme Court held that the respondents in that case "were deprived of their rights to appeal, *and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them.*" 481 U.S. at 842, 107 S.Ct. 2148 (emphasis added). The emphasis here is on the rights that the alien has, not on the

reasonableness or good faith of the hearing officer's failure to explain something he was required to explain. *See also* former 8 C.F.R. § 242.17(a) (1994) ("The immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph . . . .");[7] *Moran–Enriquez v. INS*, 884 F.2d 420, 422–23 (9th Cir.1989) (holding that an immigration judge must inform an alien of his potential eligibility for relief from deportation, even where the record only "raises a reasonable possibility that [the alien] may be eligible for relief"). In Lepore's case, the hearing officer's failure to recognize the possibility that Lepore might be eligible for Section 212(c) relief arose not out of an absence of record evidence—the officer himself was aware that Lepore had a family here and that deportation might well cause hardship, for example—but rather because he was forced to apply the Attorney General's erroneous understanding of the law.

*Moran–Enriquez* makes clear that the alien has the same rights, even if the hearing officer's misreading of the evidence was in good faith. 884 F.2d at 423. Here, there was not even a mistake, but rather a compelled misapplication of the law. The correct rule must be that in every case where it is established at any stage that Section 212(c) relief was potentially available, the hearing officer must inform the alien of the rights granted by that provision.

As a final matter, the Court notes that *United States v. Vieira–Candelario*, 6 F.3d 12 (1st Cir.1993), is factually distinguishable from the case at hand. In *Vieira–Candelario*, a hearing officer had incorrectly refused to consider Vieira's Section 212(c) application. 6 F.3d at 13. The

First Circuit held that this error did not effectively eliminate Vieira's right to judicial review, *id.* at 15 (*citing Mendoza–Lopez*, 481 U.S. 828, 837–39 n. 17, 107 S.Ct. 2148, 95 L.Ed.2d 772), but based its holding on two key points that are absent here. First, Vieira was represented by counsel throughout his deportation hearing. *Vieira–Candelario*, 6 F.3d at 15. Second, Vieira had filed an appeal with the Board, specifically challenging the hearing officer's conclusion that he was ineligible for Section 212(c) relief. *Id.* Before the Board could consider the matter, however, Vieira voluntarily withdrew his appeal. *Id.* Since he voluntarily withdrew, the court saw "no way to hold that he was deprived of meaningful review of the administrative proceeding contrary to the due process clause." *Id.*

Here, Lepore appeared before the hearing officer pro se and never filed, much less withdrew, an administrative appeal. Given the absence of both critical factors, *Vieira–Candelario* is not dispositive. *See also United States v. Smith*, 14 F.3d 662, 664–65 (1st Cir.1994) (reaching the same result as *Vieira–Candelario* on similar facts).

**3. Fundamental Unfairness**

Lepore must also show that the entry of his deportation order was fundamentally unfair. 8 U.S.C. § 1326(d)(3). Fundamental unfairness is a far more challenging issue than exhaustion or deprivation of judicial review. The difficulty stems from the fact that in *Mendoza–Lopez*, the government asked the Supreme Court to assume that the defendants' deportation hearing was fundamentally unfair. As a result, the Supreme Court did not have

---

7. The substance of former 8 C.F.R. § 242.17(a) can now be found at 8 C.F.R. §§ 1240.11(a)(2) & 1240.49(a).

occasion to provide any guidance on exactly what types of error render a deportation hearing fundamentally unfair.

Predictably, the various federal circuits have addressed the issue quite differently since *Mendoza–Lopez*. Although there is an emerging consensus that fundamental unfairness involves (1) a due process violation, and (2) actual prejudice, this two-prong test has not produced consistent results across the circuits. *See Smith*, 14 F.3d at 664 ("To provide a basis to attack a deportation order collaterally in a subsequent criminal prosecution, a defendant must show that any error committed with respect to the deportation hearing violated his due process rights, and that this error was so fundamental that it effectively [eliminated] the right of the alien to obtain judicial review.") (alteration in original) (quoting *Vieira–Candelario*, 6 F.3d at 15 (quoting *Mendoza–Lopez*, 481 U.S. at 837–39 n. 17, 107 S.Ct. 2148) (internal quotation marks omitted)); *see also, e.g., Aguirre–Tello*, 353 F.3d at 1204–07 (en banc); *Wilson*, 316 F.3d at 510; *Fernandez–Antonia*, 278 F.3d at 159; *United States v. Baez–Ortega*, 906 F.Supp. 740, 747–48 (D.P.R. 1995), *aff'd* 95 F.3d 1146 (1st Cir.1996) (collecting cases). Occasionally, an error might be sufficiently fundamental that prejudice can be presumed. *See Waldron v. INS*, 17 F.3d 511, 517 (2d Cir.1993), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994) (holding that under *Montilla v. INS*, 926 F.2d 162, 168–69 (2d Cir.1991), a "per se error" rule applies when an INS violation of its own regulations denies an alien's right to counsel). Both Lepore and the government have cited persuasive case law, but agreed at oral argument that the precise nature of "fundamental unfairness" has yet to be determined conclusively in the First Circuit.

### a. Due Process

■ Courts disagree on whether the improper deprivation of Section 212(c) relief is tantamount to a due process violation. Several courts have held that the failure of a hearing officer to advise an alien that Section 212(c) is available is a fundamental procedural error that gives rise to a due process violation. Others have held that such an omission cannot amount to a due process violation because there is no liberty or property interest in Section 212(c) relief.

In support of his argument, Lepore cites *Copeland*, where the court held:

> The deportation order was fundamentally unfair, as required for a collateral attack, because the Immigration Judge not only failed to advise the defendant of the existence of discretionary relief, but affirmatively misled him by indicating that he was ineligible for such relief. This misadvice improperly, as it turned out, discouraged the defendant from seeking discretionary relief.

228 F.Supp.2d at 271–72.

Other courts have adopted a similar approach. The Ninth Circuit has consistently held that failure to advise a defendant of Section 212(c) eligibility violates due process. *See United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1054 (9th Cir.2003) (citing *Muro–Inclan*, 249 F.3d at 1183–84) ("The duty of the [hearing officer] to inform an alien of his eligibility for relief is mandatory, and the failure to do so constitutes a violation of the alien's due process rights."); *see also United States v. Frias–Gomez*, 262 F.Supp.2d 11, 14 (E.D.N.Y. 2003) (citing *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000)) ("Improper denial of the opportunity to apply for discretionary relief is a fundamental procedural error.").

In response, the government cites *Wilson*. In *Wilson*, a hearing officer considered the merits of a defendant's Section 212(c) claim but denied relief, and the Board upheld the deportation order without considering the merits of the Section 212(c) application, because it understood AEDPA and IIRIRA to apply retroactively. 316 F.3d at 508–09. The defendant was arrested in the United States following his deportation and charged with illegal reentry. *Id.* at 509. His illegal reentry case occurred after *St. Cyr* was decided, and he argued that his original deportation order was invalid because the Board had failed to consider the merits of his Section 212(c) application. *Wilson*, 316 F.3d at 509.

The *Wilson* court held that "there is no protected liberty or property interest in discretionary 212(c) relief," and as a result, the defendant could not show a due process violation. *Wilson*, 316 F.3d at 510 (quoting *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir.2002)). Given that there could be no due process violation, the court held that the defendant could not satisfy the fundamental unfairness requirement of 8 U.S.C. § 1326(d)(3). *Wilson*, 316 F.3d at 510. Several other circuits have adopted this approach. *See United States v. Lopez–Ortiz*, 313 F.3d 225, 231 (5th Cir.2002), *cert. denied*, 537 U.S. 1135, 123 S.Ct. 922, 154 L.Ed.2d 827 (2003) (holding that Section 212(c) relief is not a right protected by due process "because it is available within the broad discretion of the Attorney General"); *United States v. Roque–Espinoza*, 338 F.3d 724, 729 (7th Cir.2003) (opining that "it would be hard to show that the loss of a chance at wholly discretionary relief is the kind of deprivation of liberty or property that the due process clause is designed to protect"); *Oguejiofor v. Attorney General*, 277 F.3d 1305, 1309 (11th Cir.2002) ("[A]n alien has no constitutional-ly protected right to discretionary relief or to be eligible for discretionary relief.").

If there is no liberty or property interest at stake, then failure to advise an alien of his eligibility cannot amount to a due process violation. Absent a due process violation, an alien cannot establish fundamental unfairness and his collateral attack fails. This approach, *see Wilson*, 316 F.3d at 506, effectively forecloses the collateral attack as a means for those aliens improperly denied a chance at a Section 212(c) waiver to challenge their deportation order. This result is inconsistent with *Mendoza–Lopez*, in which the Supreme Court held that "because respondents were deprived of their rights to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction, and the dismissal of the indictments against them was therefore proper." 481 U.S. at 842, 107 S.Ct. 2148. The Supreme Court's unequivocal language here suggests that the result would have been the same, even if the government had not stipulated that the original hearing had been fundamentally unfair.

Moreover, it is perfectly sensible to talk about a liberty or property interest in a right to *apply* for Section 212(c) relief, even if there is no such interest in the relief itself, particularly when consideration of potential eligibility goes to the heart of a deportation hearing's fairness. Such a distinction is at work in cases like *El Moraghy v. Ashcroft*, 331 F.3d 195 (1st Cir.2003), where the First Circuit held that a hearing officer's denial of Section 212(c) relief was not based on substantial evidence, because the officer failed even to *consider* factors it was required to consider in making its determination. *Id.* at 203. *El Moraghy* stands for the proposition

that an alien is entitled to a particular kind of inquiry, although not necessarily to any particular result from that inquiry.

It is by no means uncommon that re-characterization of a right makes it suddenly cognizable. *Cf. Regents of Univ. of California v. Bakke,* 438 U.S. 265, 280 n. 13, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Powell, J.) (holding that although a white medical school applicant would have no cognizable injury for standing purposes if the injury he alleged were denial of admission, an allegation that he was not permitted to *compete* for all 100 admission slots, on account of his race, would suffice). Thus, although it is important for analysis purposes to define the particular interest at stake in due process cases, it is important not to over-reify the objects of inquiry, as in so doing a court may lose sight of the statutory policies and constitutional values that the Court is seeking to implement.

This Court follows the reasoning of those courts that have held that the failure of a hearing officer to advise an alien of Section 212(c) eligibility is a fundamental procedural error and a due process violation.[8] If Lepore was eligible for Section 212(c) relief, the omission of the hearing officer so to inform him was a fundamental procedural error that deprived Lepore of due process. *See Gonzalez–Valerio,* 342 F.3d at 1051; *Frias–Gomez,* 262 F.Supp.2d at 14; *Copeland,* 228 F.Supp.2d at 271–72.

### b. Prejudice

■ To challenge a deportation order successfully, "the defendant must show

prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *United States v. Loaisiga,* 104 F.3d 484, 487 (1st Cir.1997), *cert. denied,* 520 U.S. 1271, 117 S.Ct. 2447, 138 L.Ed.2d 206 (1997); *see also id.* at 487 n. 2 (collecting cases in other circuits requiring a prejudice showing). To determine whether Lepore was "reasonably likely" to have been granted relief from deportation, the Court looks to those factors that the Board would have considered in evaluating a Section 212(c) application: "the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, the number of citizens in the family, and the character of any service in the Armed Forces." *St. Cyr,* 533 U.S. at 296 n. 5, 121 S.Ct. 2271 (citing *Matter of Marin,* 16 I. & N. Dec. 581, 1978 WL 36472 (1978)).

■ Lepore makes several arguments that there was a reasonable likelihood that he would not have been deported had the hearing officer considered him eligible for a 212(c) waiver. First, 51.5% of all Section 212(c) applications were granted between 1989 and 1995. *St. Cyr,* 533 U.S. at 295 n. 5, 121 S.Ct. 2271 (citing Julie K. Rannik, *The Anti–Terrorism and Effective Death Penalty Act of 1996: A Death Sentence for the 212(c) Waiver,* 28 U. Miami Inter–Am. L.Rev. 123, 137 & n. 80 (1996)). Second, Lepore claims that he presented a low risk of recidivism, since his criminal offenses

---

8. Lepore points to another possible due process violation: The hearing officer cut him off and prevented him from presenting evidence. *See Kwong Hai Chew v. Colding,* 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953) (holding that due process requires that an alien be provided with a fair opportunity to be heard and to present evidence). If Lepore is correct on this point, he would seem to satisfy even the more stringent Fourth Circuit approach. Having decided this matter on other grounds, however, the Court need not reach this issue.

were attributable to a mental illness for which he has since received treatment and medication. Lepore notes that each of his convictions pre-dates his treatment and medication. Finally, he asserts that he has lived in the United States since 1977, and that deportation would cause great hardship for his wife and two children, all of whom are United States citizens.

The government argues that Lepore was not "reasonably likely" to receive a Section 212(c) waiver, because he made no showing of hardship on his family and presented no evidence that his medical condition had improved. More persuasively, the government notes that the hearing officer would certainly have considered adversely the other convictions in Lepore's alien registration file. Government's Opp'n to Def.'s Mot. to Dismiss at 11. Given these additional convictions, the government argues, the hearing officer would never have allowed Lepore to stay in the United States.

After considering these countervailing arguments, the Court originally held that it was reasonably likely that Lepore would not have been deported had the hearing officer considered him eligible for a Section 212(c) waiver. There was evidence that Lepore's medical treatment and medication lowered the risk of additional recidivism. His most recent conviction was in early 1999, for a crime committed in 1996. He had lived in the United States for twenty-two years prior to his deportation, and he left a wife and two children behind, whom the Court can reasonably presume would have suffered hardship in his absence. Furthermore, while the Court is cognizant of Lepore's criminal record, the fact that over fifty percent of applicants received a waiver in the years for which the Court has seen data, *St. Cyr.*, 533 U.S. at 295 n. 5, 121 S.Ct. 2271, suggests that even an applicant with several criminal convictions could have a reasonable likelihood of success.

It is important to remember that, by definition, "aggravated felons" are eligible for relief, so the fact that Lepore is a convicted criminal cannot be dispositive. No one can doubt that Lepore's crimes were serious, but the same can be said of any aggravated felony. At the time, the Court's attention was focused solely on the 1990 and 1999 convictions, not on Lepore's other convictions from the 1980s, so it seemed that Lepore had established a reasonable probability that he could have obtained Section 212(c) relief.

The Court therefore GRANTED Lepore's Motion to Dismiss Count One of the Indictment upon hearing oral argument. Given that *St. Cyr* had overruled *Soriano*, it appeared that the hearing officer had improperly denied Lepore the opportunity to apply for a Section 212(c) waiver, and that this error had deprived Lepore the opportunity for judicial review and had rendered his deportation order fundamentally unfair. *See* 18 U.S.C. § 16(d).

Subsequent analysis has forced the Court to reconsider its initial holdings—twice. At oral argument, the parties and the Court assumed that but for the Attorney General's erroneous interpretation of AEDPA and IIRIRA, *see Soriano*, 1996 WL 426888, 21 I. & N. Dec. 516, 537–38, Lepore was otherwise eligible for Section 212(c) relief. Upon further reflection and statutory analysis, the Court determined that this was not necessarily the case and called for further briefing.

In particular, it appeared to the Court that Lepore had fallen between some statutory cracks. When Lepore was convicted of indecent assault and battery on a person fourteen or older in January 1990, a "crime of violence" was not included in the definition of an "aggravated felony." "Crimes of violence" were added to the list in Section

1101(a)(43) by the Immigration Act of 1990, Pub.L. No. 101–649, § 511, 104 Stat. 4978, 5052, which was approved on September 30, 1990, and even then, only "crimes of violence" that were punished by at least five years in prison were included. *See* Pub.L. No. 101–649, § 511, 104 Stat. 4978, 5052 (amending Section 1101(a)(43)'s definition of "aggravated felony" to include "crimes of violence" punished by at least five years in prison); *see also United States v. Saldivar–Vargas*, 273 F.Supp.2d 1130, 1133–34 (S.D.Cal.2003). The Immigration Act of 1990 came into force on September 30, 1990. *See* Pub.L. No. 101–649, 104 Stat. at 4978. In 1996, Congress passed AEDPA, which made *all* aggravated felons ineligible for Section 212(c) relief, regardless of the length of their sentence. *See* Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, 1277 (amending 8 U.S.C. § 1182(c)). This had no immediate effect on Lepore, who was still not an "aggravated felon." Later in 1996, Congress passed IIRIRA, which amended the definition of "aggravated felony" to include "crimes of violence" punished by at least one year in prison. *See* Pub.L. No. 104–208, § 321(a)(3), 322(a)(2)(A), 110 Stat. 3009 (amending 8 U.S.C. § 1101(a)(43)(F)). Lepore became an "aggravated felon," and therefore deportable, when IIRIRA took effect. This was *after* Congress had made all aggravated felons ineligible for Section 212(c) relief through AEDPA. At no point then was Lepore *ever* eligible for a Section 212(c) waiver as an "aggravated felon."

Lepore points to two other grounds for upholding the Court's original ruling, however. First, and most importantly, although the 1990 conviction did not make Lepore deportable as an "aggravated felon," it did render him deportable under

former 8 U.S.C. § 1251(a)(4), which provided:

> Any alien in the United States . . . shall, upon the order of the Attorney General, be deported . . . who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial . . . .

*Id.*[9] As of January 18, 1990, Lepore's criminal record included a 1984 conviction for indecent assault and battery on a child under the age of fourteen. Gov't's Opp'n to Def.'s Mot. to Dismiss, Ex. B. Indecent assault and battery on a person fourteen or older under Mass. Gen. Laws ch. 265, § 13H, is a crime of moral turpitude, *Maghsoudi*, 181 F.3d at 15, so it necessarily follows that indecent assault and battery on a child *under* the age of fourteen must be as well. That violent or nonconsensual sexual touching of children is more morally reprehensible than such touching of adolescents or adults is beyond reasonable controversy.

At that time, Lepore would also have been potentially eligible for Section 212(c) relief, because he had had seven consecutive years of lawful unrelinquished domicile in the United States. *See* former 8 U.S.C. § 1182(c) (1988). Thus, he did not fall between the statutory cracks after all.

This determination obviates any need to pass on Lepore's second argument, that under the reasoning of *Leon–Paz*, 340 F.3d 1003, even aliens who, pre-AEDPA, pled guilty to offenses that were not deportable ones at the time fall under the *St. Cyr* umbrella, because aliens know that the definitions of deportable crimes are poten-

---

9. The substance of this element of former 8 U.S.C. § 1251(a)(4) now appears in 8 U.S.C. § 1227(a)(2)(A)(ii).

tially subject to retroactive change, and Section 212(c) would thus constitute a "second bulwark" (beyond pleading to a non-deportable crime) to protect against future deportation. *See id.* at 1006. Although the Ninth Circuit is certainly correct that even such aliens have a degree of settled expectations when they plead guilty, this Court need not determine whether such expectations would be sufficient to bring them within *St. Cyr*'s orbit.

The government has advanced two powerful arguments in response to Lepore. The first, which the Court finds dispositive, is that when one considers Lepore's four convictions in the 1980s, it cannot be said that Lepore had a reasonable probability of getting Section 212(c) relief. Looking at a record of six sex offenses rather than two, the Court agrees that Lepore was unlikely to be among the 51.5 percent of applicants granted Section 212(c) relief. Although Lepore was being deported based on his 1990 conviction as an "aggravated felon," had the hearing officer considered Lepore eligible for Section 212(c) relief, he could have looked at Lepore's other crimes in determining the appropriateness of such relief.

Because the Court so holds, it does not need to explore the merits of the government's second argument. The government urges that Lepore cannot argue that his 1990 plea was in reliance on the availability of Section 212(c) relief, given that he had already committed four crimes involving moral turpitude, and was thus already liable to be deported. Answering this argument would require, *inter alia*, a determination whether *Leon–Paz* should apply to this case, and the Court again refuses to take up that inquiry. The Court notes, however, that the government goes too far in arguing that the Court must perform a detailed inquiry into whether Lepore actually relied on the availability of Section

212(c) relief in making his plea. *See* Gov't's 2d Supp. Opp'n to Def.'s Mot. to Dismiss at 2–3. To the extent that *Mattis v. Reno*, 212 F.3d 31, 34 (1st Cir.2000), held otherwise, it has been abrogated by *St. Cyr*, which found no need to engage in such an inquiry to reach its holding. Similarly, the government's invocation of *Dias v. INS*, 311 F.3d 456, 458 (1st Cir.2002), is inapposite, as that case stands only for the unremarkable proposition that *St. Cyr* does not prevent retroactive application of AEDPA to aliens who went to trial rather than pleading guilty, because such aliens cannot argue that they did so in reliance on the availability of Section 212(c) relief.

## III. CONCLUSION

The Court holds that indecent assault and battery on a person fourteen or older, Mass. Gen. Laws ch. 265, § 13H, is a "crime of violence" under 18 U.S.C. § 16. It is also, therefore, an "aggravated felony" that properly rendered Lepore deportable. Furthermore, the Court holds that to the extent that the failure of the hearing officer to advise Lepore of his potential eligibility for Section 212(c) relief violated his due process rights, his collateral attack still must fail, because such failure did not prejudice him.

Accordingly, the Defendant's Motion to Dismiss Count One of the Indictment [Doc. No. 13] is DENIED.

SO ORDERED.